**BRADLEY et ux. v. FREEMAN et ux.**

**No. 5451.**

Court of Civil Appeals of Texas. Amarillo.

June 8, 1942.

Rehearing Denied July 6, 1942.

A. A. Dawson and H. C. Geddie, both of Canton, for appellants.

West & Stanford, of Canton, for appellees.

FOLLEY, Justice.

This suit was filed by the appellants, S. M. Bradley and wife, Viola Bradley, against the appellees, S. K. Freeman and wife, Lettie Freeman, seeking judgment upon a promissory note dated April 28, 1930, executed by the appellees and payable on or before January 1, 1941, to E. B. Downing in the sum of $1,200, and for foreclosure of an alleged vendor's lien upon 129 acres of land in Van Zandt County. The note purported to be for part payment of the purchase price of the land in a conveyance by deed dated April 28, 1930, from E. B. Downing to S. K. Freeman and wife. Downing was an uncle of Mrs. Freeman. Upon his death in 1936, the note for $1,200 passed by his will to his widow, Maude Downing. At her death in 1938 the note passed by her will to her sister, Mrs. Viola Bradley, one of the appellants.

The appellees answered by attacking the alleged vendor's lien as invalid and void up-

on the theory that the conveyance wherein the purported lien was reserved was a simulated transaction for the sole purpose of attempting to create a lien upon their homestead. They alleged that prior to April 25, 1930, they were husband and wife, residing upon the land involved as their homestead; that on such date E. B. Downing offered to make them a loan and suggested that they and he execute certain conveyances in order to create a lien against their homestead; that in accordance with such agreement they executed a deed dated April 25, 1930, purporting to convey to E. B. Downing the 129 acres of land and reciting a cash consideration of $4,000; that in truth and in fact no consideration of any sort was paid by Downing for such deed, the sole purpose of the deed being apparently to vest title to their homestead in Downing so that he might immediately reconvey the land to them and retain the purported lien; that in furtherance of such illegal scheme E. B. Downing executed a deed dated April 28, 1930, reconveying the land to appellees; that such deed recited a cash consideration of $2,800 and the vendor's lien note sued upon in the sum of $1,200.; that in truth and in fact nothing of value was paid by appellees for the deed; and that said purported lien constituted a cloud upon the title to their homestead which they sought to have removed and the alleged lien canceled.

The trial was before the court without a jury. A personal judgment was entered for appellants against appellees for $1,607.-03, the amount due upon the note with interest and attorney's fees, but the court refused a foreclosure and found that the purported lien was void and decreed that the same be canceled.

The appellants contend that the court erred in not foreclosing the alleged lien because the evidence revealed that the note for $1,200 was given in continuation of a lien theretofore existing upon the land, which fact would entitle them to foreclosure.

The testimony shows that the appellees had resided upon the land continuously from 1924 up to the date of the trial, and it is uncontroverted that the land constitutes the homestead of appellees and was their homestead at all times material to this controversy. A part of the land was shown to have been inherited by Mrs. Freeman as one of the Norman heirs and she and her husband purchased the remaining undivided interest in the 129 acres from the other Norman heirs. In such purchase the appellees became indebted to such other heirs in the sum of $1,160.99, evidenced by a note secured by a vendor's lien against the undivided interest held by such other heirs, but as to the amount of such interest held by them the evidence is uncertain. The appellants briefed the case upon the theory that the appellees purchased three fifths of such land from the other Norman heirs, but the testimony of S. K. Freeman was to the effect that his wife inherited one half of the land before such purchase. At any rate, it is conceded that this prior lien did not cover the whole of the 129 acres of land. While this indebtedness was outstanding the appellees, by deed dated April 25, 1930, conveyed the 129 acres to E. B. Downing for a purported cash consideration of $4,000. In such conveyance no mention was made of the note for $1,160.99 then outstanding. By instrument dated April 26, 1930, the other Norman heirs executed a release of this $1,160.99 note and lien in favor of the appellees. By deed dated April 28, 1930, E. B. Downing conveyed the land to the appellees for a recited cash consideration of $2,800 and the execution by appellees of the note for $1,200 sued upon. It is uncontroverted that no consideration was paid by Downing for the deed to him and that the appellees did not pay the cash consideration of $2,800 mentioned in the deed from Downing reconveying the land to them. It is conceded by the appellees, however, that Downing did advance them the sum of $1,200 evidenced by the note and that such money was used by them in the payment of the outstanding note for $1,160.99 held by the other Norman heirs. According to the testimony of S. K. Freeman there was no agreement between the Freemans and Downing that the prior existing lien released by the other Norman heirs should be carried forward and incorporated in the deed from Downing to the appellees wherein the lien herein involved was purportedly retained. There was no other testimony offered upon this issue.

Under the facts and circumstances of this case, we are unable to agree with appellants' contention that the appellees and Downing contemplated or agreed that the prior security held by the other Norman heirs should be merged and vested in the purported vendor's lien retained by Downing. In the first place, there is no.

pleading before us to support such a theory. We think that before the appellants could be subrogated to the rights of the holders of the prior existing lien discharged by the money borrowed from Downing, it was incumbent upon them to plead such facts as would warrant such subrogation. Crebbin v. Moseley et ux., Tex.Civ.App., 74 S.W. 815, writ refused; Bludworth et al. v. Dudley et al., Tex.Civ.App., 173 S.W. 561. Moreover, if the appellants had made such allegations they would have sustained the additional burden to support them by proof. It is apparent from the evidence above outlined that such theory was not only unsupported but expressly refuted. It is also evident that the prior existing lien did not cover the whole of the 129 acres herein involved. Therefore, if the pleadings and proof had supported the theory of subrogation, the appellants would have been entitled to foreclosure upon only the interest theretofore held by the other Norman heirs, which interest is not designated by the testimony. Under the record presented, this theory of subrogation must therefore be denied.

By a second assignment the appellants contend that the court erred in refusing to allow them to file a supplemental petition wherein they denied that the deeds in question were simulated transactions and alleged that such deeds merely constituted a method adopted by the appellees and Downing to effect a transfer of the original lien held by the Norman heirs to E. B. Downing, and that the lien granted to Downing was only a perpetuation of the original lien. In this supplemental petition the appellants apparently were attempting to plead their present claim of the right of subrogation. It appears from the bill of exception approved by the court that the evidence was introduced in the trial below on October 8, 1941, and the arguments of counsel were heard by the court on October 10, 1941. Immediately after the court heard the arguments, the appellants, for the first time, asked leave to file their first supplemental petition, which permission was refused. The filing of such belated petitions is largely discretionary with the trial court and we would be unauthorized to say, under these facts, that the trial court abused its discretion in this instance. Rule 67, Vernon's Texas Rules of Civil Procedure.

The judgment is affirmed.